*Court of Common Pleas, Dauphin County, June 2d,* 1862.

THE COMMONWEALTH OF PENNSYLVANIA v. HERR.

A county, in order to obtain an abatement of its tax for prompt payment, must pay it in full, as fixed by the revenue board; no allowance can be made for exonerations. The collectors and treasurer may be permitted to deduct their commissions from the sum so fixed. The treasurer cannot receive a commission on the amount retained by the tax collectors or himself; neither is paid into the State treasury; nor on exonerations of militia fines, or tavern or store licenses exonerated. He is entitled to a percentage for liquor license taxes collected and paid over. There is no law authorizing a tax on millers as such.

If the amount assessed and collected for State taxes exceeds the valuation fixed by the revenue commissioners, it must be paid into the State treasury under the act of 22d April, 1846. Where no quarterly statements are made by the county treasurer, and the money not paid over quarterly to the State, no commission can be allowed on it, as it is the duty of the treasurer to show when it was received.

No fee can be paid to an attorney at law for trying a claim for taxes against a delinquent storekeeper; the act makes it the duty of the attorney-general

[The Commonwealth of Pennsylvania *v.* Herr.]

or his deputy to collect it. The county treasurer is permitted to employ an attorney to recover militia fines from collectors who fail to pay over, and the lawyer employed can retain his fee out of the money collected.

BY THE COURT.—The case as stated presents the following points for the decision of the court.

First. Did the accounting department properly deduct $165.97 on account of an abatement of five per cent., said to have been erroneously allowed to Lancaster county on $315.67, paid into the State treasury on tax on real and personal property for the year 1858, or was the sum last aforesaid paid on account of the State tax for that year?

The solution of this question depends on the proper construction of the 42d section of the act of the 29th of April, 1844, which provides, *inter alia*, that "if any county shall pay into the State treasury its quota of tax levied on its said adjusted valuation fifteen days prior to the first day of August in any year, such county shall be entitled to an abatement of five per cent. *on the amount so paid.*" Do the words *amount so paid,* apply to the sum actually paid into the State treasury, or to the quota of tax levied on its adjusted valuation? The difference arises from the percentage paid to the collectors and county treasurer, as they are both properly deductible from the quota of State tax chargeable to the county, and yet are never in point of fact, or in contemplation of law, paid into the State treasury, but retained by those officers out of the money in their hands. According to our interpretation of the statute the whole of the State tax due by a county must be paid into the treasury of the commonwealth at least fifteen days prior to the first day of August of each year; but that means the sum due after paying the officers for collecting it, and then the county is entitled to an abatement of five per cent. on the sum *actually paid in.* Such construction is more in accordance with the words of the act than the one contended for by the county treasurer. "*The amount so paid*" refers to the sum of money paid into the State treasury, and not to the "*adjusted valuation.*" According to our conception of the law neither the account as stated at the department, nor the case stated, present the question properly; although the latter shows truly what took place, and furnishes sufficient data to enable us to arrive at a proper conclusion as to the sum of $165.97 now under consideration.

The assessments of State tax in the county of Lancaster for the year 1858 amounted to $92,855.96. The exonerations to collectors for that year is $2967.09, leaving to be collected only $89,888.87. This falls short of the tax charged against the county by the revenue commissioners $1,683.66, the sum charged being $91,572.53, which in this case must be taken to be the true amount of the State tax due, as the county cannot be

relieved without paying its full proportion as fixed by the revenue board, leaving out all exonerations. This we decided in the case of Bradford county, and have seen no ground to change that opinion.

The account then would stand thus:

Amount fixed by the revenue board, $91,572.53.

Commission allowed collectors, $5747.29.

County treasurer's commission, $858.53.

Amount of tax to be paid into the treasury, $84,966.71.

On which allow a deduction of five per cent., $4248.33.

The county has, therefore, already received a larger deduction than it is entitled to without the item now in dispute, and the appeal cannot be sustained as to this item.

The receipt of Mr. Magran to the county treasurer for $88,-148.43 on account of State tax for the year 1858, covers a larger sum than is due from the county for that year, and must have been applied to the arrears of the previous year, or to taxes due for other subjects on which no abatement can be allowed; and his decision is by no means conclusive, but the errors can be corrected by the department at an after time, especially when, as here, the account was opened and re-examined on the application of the county treasurer. The abatement can only be allowed on the whole sum due for State taxes paid into the treasury that year. The next question presented is: Can the county treasurer claim commissions on account of the exonerations allowed collectors, or the percentage retained by them, or by himself for his services? The acts of Assembly authorize the county commissioners to exonerate the township collectors from certain taxes on account of the indigence of the parties or mistakes in the assessments, and for various other causes. The taxes so exonerated never come into the county treasury, and are lost to the State or the county. A certain sum is authorized to be retained by the collectors as percentage for their trouble, and the county treasurer is also allowed to retain one per centum for his services out of the tax on real and personal property collected for the use of the commonwealth. The seventh section of the act of June 11th, 1840 (Pamphlet Laws, 614), provides "that it shall be the duty of the treasurer of each county, upon the settlement of his account as aforesaid, to pay into the treasury of the commonwealth the amount so received by him, for which he shall be allowed one per cent. *on the amount so paid.*" It is merely on the amount paid into the State treasury that he is to be allowed a commission by the plain words of the statute, and we are unable to see any reason for allowing it on exonerations, with which he had nothing to do except to secure a list thereof from the county commissioners, or on the percentage of collectors, which never came into his

hands; and it is certainly unusual for one officer to claim a percentage on his own compensation.

The same doctrine is applicable to militia fines exonerated and to the percentage retained by the collectors: the money never came into the hands of the county treasurer, nor was it paid into the State treasury. The next item of any moment which is presented by the stated case is relative to the percentage allowable to the treasurer on licenses to retailers of merchandise, of liquors by not less measure than one quart, and to millers. The county treasurer also claims to recover a like percentage on the exonerations allowed him on account of said money not being collectible, to the amount of $460. For the last-named item there is no pretence of claim. The treasurer is only authorized to deduct a percentage " from the gross amount of money received by him," all of which must be paid over within a specified time. This money never was received, and hence the exoneration. If received, he could obtain no compensation for its collection unless it was paid into the State treasury within the period designated.

The department should have allowed the regular percentage to the treasurer for collecting and paying over the amount received from licenses to storekeepers or others to sell liquors by not less measure than one quart. It is, under the present laws, a distinct subject of grant; the license emanated from a different source than that of the ordinary retailer—the Court of Quarter Sessions —and may be granted either with or without permission to sell other goods. A separate account is required to be kept of the money received from that source, which is the true criterion of the right to charge the percentage under the provisions of section seven of the act of April 15th, 1850. This subject was carefully examined and decided in The Commonwealth *v.* McGrath, Treasurer of Philadelphia County, very recently, to which we refer for our reasons.

We can find no law upon our statute-books authorizing the county treasurer to issue a license to millers, as such. If granted to them, it must be as retailers; and if required, it is because they retail the product of their manufactory. A miller, as such, is no more required to take out a license to carry on his business than is a tailor or a blacksmith; each must do it, if they become retailers of merchandise within the provisions of the act of Assembly; neither is required to do it because they carry on a trade or calling; and if issued to the miller, tanner, or other dealer, it is because they become retailers, and are required to take out a license to sell the commodities manufactured by them, if they make sales at some other place than the store or warehouse at their manufactory (11th section of the act of April 22d, 1846). Such we understand to be the decision in Berks County *v.* Bertolet (1 Harris, 522). The action of the mercantile appraisers

referred to in the case stated can make no possible difference, as their duty is confined to ascertaining the names of the dealers, and classifying and arranging them according to the amount of their sales, not to make new classes of dealers.   If a license was lawfully granted to any miller by the treasurer of Lancaster county, it was to retail goods, wares, and merchandise; and they must be classified, and returned with other retailers.   No separate account for the money received for such license is authorized or required to be kept.   On that point the department settled the treasurer's account correctly.   The assessments of State taxes in Lancaster county for the year 1859 amounted to $93,871.50, of which was exonerated by the commissioners $1272.64, leaving for collection and received by the treasurer, $92,598.86.   The amount charged against that county by the board of revenue commissioners was $91,572.53; and the difference between that and the sum received, $1026.33, the treasurer paid over to the county commissioners, instead of paying it into the State treasury.   For this he is charged with that amount, and it contributes a material item in the appeal. The act of 1844, constituting the board of revenue commissioners, authorized them to determine the amount of State taxes on real and personal property, which should be charged against each county of the commonwealth.   If less was raised, the difference must be forthwith paid out of any money in the county treasury. If more, it went into the same treasury.   The 17th section of the act of April 22d, 1846, made a different provision.   It declared that the amount fixed by the revenue board should be treated as a *minimum valuation,* below which the aggregate amount of assessments in the different counties should not descend, but any excess of valuation must be taxable for State purposes.   Under this statute the excess of valuation in Lancaster county should have been paid into the State treasury; and giving it over for the use of Lancaster county was a misapplication of the money, for which the county treasurer is answerable to the commonwealth; and it was properly charged against him in that settlement.   We have been referred to an opinion of this court, delivered in The Commonwealth *v.* Bradford County, in which we said that such surplus would be retained in the county treasury.   That was a mere *obiter dicta,* no part of the case, and not necessary for its solution; and the opinion was framed on the act of 1844 alone, without observing or adverting to the act of 1846, which makes an essential change in the law.   We do not consider ourselves bound by the mere *dicta* of the Supreme Court, still less by our own, when erroneous.

On the settlement of the account of 1859, the department refused to allow the treasurer any commission on the sum of $11,935.34, collected during that year on certain specified items, on the ground that he had not settled quarterly accounts, and failed to show that he had paid over the money, as required by law.   This amounted

[The Commonwealth of Pennsylvania *v.* Herr.]

in all to $144.29, a commission having been allowed on many of the larger items.   The 79th section of the act of May 18th, 1857 (Pamphlet Laws, 570) requires all county and city treasurers and certain officers, " on the first Monday of July, 1857, and quarterly thereafter, or oftener if required by the State treasurer, to pay into the State treasury, or other designated place of deposit, the whole amount of money received during the period preceding said payments, and furnish to the State treasurer statements under the proper heads designating the source from which the money was received; and said officers shall file and settle quarterly accounts in the office of the auditor-general, as now required by law. Upon the settlement of said quarterly accounts, if it appear that the receipts shall not have been paid, as directed by this section, any officer so offending shall forfeit his fees and commissions on the whole amount of money collected during the quarter."   The case stated concedes that no quarterly accounts were settled; that a circular letter directing attention to the law was sent to the appellant by the auditor-general, but no special call was made upon him for such settlement and payment; also, that no evidence was exhibited at the department as to whom any of the money paid over on the 13th of April was received.   The act of Assembly is a public law, of which every receiving officer was bound to take notice, and with the mandate of which he is bound to comply. No special or general requisition need emanate from the department at Harrisburg; it is only when the State treasurer requires settlements to be made more frequently than every quarter, that notice to that effect must be given.

The stated case does not find when the money was received on which the appellant claims a commission.   It does find, however, that he failed to comply with his official duty, and neither proved to the department nor now in court, when the money came into his hands.   If he had shown on the settlement or on a trial, that the whole sum was received during the last quarter, he would have been entitled to a commission on all.   If part was received then and a portion in previous quarters, the commission would have been allowed on the part received in the last quarter; for it must be observed that the forfeiture is imposed, not for a failure to make quarterly settlements, but to pay over the money received during the quarter.   The county treasurer now contends that it is to be presumed that all of the money was received during the last quarter, and immediately before it was paid over, as no other time of receipt has been shown, and the law presumes that a public officer has done his duty.   In the present case it already appears that this officer has not done his duty.   He was required by law to make quarterly settlements, which he neglected; and it rests upon him to show when the money came into his hands; he alone can know it, and it can by no possibility be proved by

the commonwealth. Every presumption must be made against the appellant under these circumstances. If the cause were trying by a jury, we should feel no hesitation in instructing them to find against the county treasurer on the facts as exhibited, and although nothing can be taken by intendment in a case stated on special verdict, but should be admitted or found, yet legal presumptions may be drawn from facts admitted. Here the party whose duty it is to show when the money was received, fails to prove it, and he therefore fails to establish his right to compensation. The *onus probandi* rests upon the county treasurer, and we have no right to conjecture or speculate on probabilities that the money was received wholly or partially during the last quarter. The same doctrine applies with equal force to the arrears of militia fines long due, as to the license-money received for that year. The treasurer may have had it in his hands for many months, and we cannot permit him by any possibility to gain an advantage through his own neglect and violation of official duty. The compensation claimed was properly refused, and the department would have been justified in disallowing all the commissions for the year, except on money proved to have been received during the last quarter.

The county treasurer claims a credit for five dollars paid N. Ellmaker, Esq., for attending to a suit brought by appeal into the court of Lancaster county for the collection of mercantile taxes, in which judgment was rendered against the commonwealth.

By the 2d section of the act of March 4th, 1824, it is provided that when mercantile taxes have to be collected by suit, the county treasurer shall be entitled to recover from the delinquent ten per cent. for his trouble; and if an appeal is taken to court, the attorney-general or his deputy is to prosecute such appeal to judgment, "for which he is to recover the sum of three dollars and no more." By the 8th section of the act of April 7th, 1830, the compensation to the treasurer is reduced to five per cent., but no change is made as to the duty of the attorney-general, or his compensation. The 1st section of the act of March 13th, 1847, disallows any costs to be paid out of the county treasury for collecting mercantile taxes, but the same must be paid by a warrant drawn on the State treasury by the auditor-general. It is not found in this case that Mr. Ellmaker was district-attorney; we must therefore take it that he was private counsel employed by the county treasurer, who has no right to place the business in the hands of any other than the district-attorney, on whom is devolved the duties required to be performed by the deputy of the attorney-general, and who could in no event demand a fee of more than three dollars; and this and all other costs in the case must be paid by the warrant of the auditor-general. It is not for us

[The Commonwealth of Pennsylvania *v.* Herr.]

to determine whether it is or is not the interest of the common-wealth to restrict the compensation of attorneys who attend to her lawsuits to so low a compensation; but it is our duty to decide that where an officer intrusted with the collection of public money, pays it out in violation of the acts of Assembly, he can claim no compensation for such expenditure. In the present case, the county treasurer paid the costs illegally, and can claim no credit for such disbursement.

The appellant permitted Mr. Franklin, an attorney-at-law, to retain fifteen dollars as compensation for some four hundred dollars collected by him from a delinquent collector of militia fines, by a suit in court. The whole money actually received by the appellant was paid into the State treasury but he is charged with the fifteen dollars in addition. We cannot discover any provision in the militia laws prescribing the mode of proceeding against delinquent collectors of fines, except it may be under the act of 21st of April, 1858, which imposes a penalty of not less than twenty-five nor more than fifty dollars, against such officer for a neglect of duty, to be sued for by the district-attorney in the name of the commonwealth; but that would be poor compen-sation to the State for the loss of over four hundred dollars received by the collector. A suit must therefore be brought for the recovery of the money, and such business can only be con-ducted by attorneys-at-law. The county treasurer, who is only entitled to receive a commission of one per cent. for receiving and paying over the money, cannot be expected to pay the attorney's fees out of his own pocket, nor would any court oblige the attor-ney to pay over the money without permitting him to retain the customary percentage for collecting. It is not the policy or interest of the State to permit collectors to pocket and retain the money received by them, yet such must be the case if no allow-ance can be made for enforcing payment in the only method known to the law. Some officer must set the machinery of the law in motion, and we know of no one more suitable to do so than the county treasurer, who is authorized to receive the money from the collector, and pay it into the State treasury. It is not made the duty of any particular attorney to attend to these collections, and therefore the county treasurer can make his own selection. The charge here does not seem to be unreasonable, and should have been allowed by the department.

The case is entirely unlike the one last considered. There the duty is directed to be performed by a particular officer, the amount of compensation is fixed by law, and it cannot be paid in the method prescribed in the act of Assembly. It would be eminently proper for the legislature in this, as it has in some other cases, to require the delinquent collector to pay all the expense of re-covering the money, by fixing a penalty of some five or ten per

[Commonwealth of Pennsylvania *v.* National Safety Insurance and Trust Co.]

cent., to be recovered from him by the attorney for his fees; but until that is done, the attorney must be permitted to retain his compensation, and the county treasurer held responsible for no more money than comes into his hands. This disposes of all the legal questions, and any other errors will be corrected in the account annexed, as agreed by the stated case.

*Knox* and *Purviance, for plaintiff.*

*Fisher, for defendant.*